## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH FRITTS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 15-00209-N |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Fritts has brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 19).

Upon consideration of the parties' briefs (Docs. 13, 14, 15) and the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])"),[1] the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 17, 20).

## I.    **Background**

On September 14, 2011, Fritts filed an application for a period of disability and DIB with the Social Security Administration ("SSA"),[2] alleging disability beginning June 29, 2011.[3] After his application was initially denied, Fritts requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on July 8, 2013.  On August 13, 2013, the ALJ issued an unfavorable decision on Fritts's application, finding him "not disabled" under the Social Security Act and thus not entitled to benefits.  (*See* R. 17 – 27).

Fritts requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review and submitted new evidence for the Council's consideration.  The Commissioner's decision on Fritts's application became final when the Appeals Council denied his request for review on March 3, 2015.  (R. 1 – 6).  On April 16, 2015, Fritts filed this action under § 405(g) for judicial review of the Commissioner's final decision.  (Doc. 1).   *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced

---

[2] The Social Security Act's general disability insurance benefits program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).

[3] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   <u>Standard of Review</u>

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as

automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must...tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) (West Supp. 1982) (emphasis added). As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of

the proper standards to be applied in reviewing claims." (footnote and some citations and quotation marks omitted)).   This Court "conduct[s] 'an exacting examination' of these factors."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'"  *Ingram*, 496 F.3d at 1260  (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).  *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB … requires that the claimant be disabled. 42 U.S.C. §[] 423(a)(1)(E) … A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §[] 423(d)(1)(A)…

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per

curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

"When no new evidence is presented to the Appeals Council and it denies

review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   Claims on Judicial Review

1. "The ALJ's residual functional capacity assessment is not supported by substantial evidence of record."

2. "The Appeals Council erred in failing to remand the case for proper consideration of evidence submitted to it, consisting of a thorough examination by a burn surgeon and a vocational expert.  The Appeals Council provided no evidence that it had properly considered the evidence."

3. "The ALJ conducted a flawed credibility determination based on insignificant or perceived conflicts in testimony."

(Doc. 14 at 1).[6]

### IV.   Analysis

At Step One, the ALJ determined that Fritts had "not engaged in substantial gainful activity since June 29, 2011, the alleged onset date…" (R. 19).  At Step Two, the ALJ determined that Fritts had the following severe impairments: status post 30% total body surface area burns to the left arm, lower back, buttocks, bilateral

---

[6] Generally, claims of error not raised in the district court are deemed waived. *Cf. Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court."); *Hunter v. Comm'r of Soc. Sec.*, No. 15-11567, 2016 WL 3159217, at *4 (11th Cir. June 7, 2016) (per curiam) (unpublished) (applying *Stewart* holding in Social Security appeal).

thighs, bilateral legs, and bilateral feet.  (R. 19).  At Step Three, the ALJ found that

Fritts did not have an impairment or combination of impairments that meets or

equals the severity of one of the specified impairments in the relevant Listing of

Impairments.  (R. 20).

> At Step Four,
>
> the ALJ must assess: (1) the claimant's residual functional capacity
> ("RFC"); and (2) the claimant's ability to return to her past relevant
> work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the
> regulations define RFC as that which an individual is still able to do
> despite the limitations caused by his or her impairments. 20 C.F.R. §
> 404.1545(a). Moreover, the ALJ will "assess and make a finding about
> [the claimant's] residual functional capacity based on all the relevant
> medical and other evidence" in the case. 20 C.F.R. § 404.1520(e).
> Furthermore, the RFC determination is used both to determine
> whether the claimant: (1) can return to her past relevant work under
> the fourth step; and (2) can adjust to other work under the fifth
> step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will
> conclude that the claimant is not disabled. 20 C.F.R. §
> 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past
> relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant
> work, the ALJ must determine the claimant's RFC using all relevant
> medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That
> is, the ALJ must determine if the claimant is limited to a particular
> work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the
> claimant's RFC and determines that the claimant cannot return to her
> prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Fritts had the RFC "to perform less than the full

range of light work as defined in 20 C.F.R. § 404.1567(b)," with the following

restrictions:

He can lift and/or carry twenty pounds occasionally and ten pounds frequently. He can stand, walk, and sit for a total of about six hours each in an eight-hour workday. He can occasionally bend, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to extreme cold, heat, wetness, humidity, vibrations, noise, and pulmonary irritants such as fumes, odors, dust, and gas. He must avoid all exposure to unprotected heights, dangerous machinery, uneven surfaces, large bodies of water, and commercial driving. He should be expected to take one unscheduled break during an eight-hour workday. He should be expected to have one unplanned absence per month. He can understand, remember, and carry out no more than simple, short instructions and make simple work-related decisions with few work place changes.

(R. 20).

Based on this RFC, the ALJ determined that Fritts was unable to perform any past relevant work. (R. 25). At Step Five, the ALJ, after taking testimony from a vocational expert, found that there exist significant numbers of jobs in the national economy that Fritts can perform given his RFC, age, education, and work experience. (R. 26). Thus, the ALJ found that Fritts was not disabled under the Social Security Act. (R. 26).

## A.   Claim 3 (Credibility Assessment)

In *Holt v. Sullivan,* 921 F.2d 1221 (11th Cir. 1991), [the Eleventh Circuit] articulated the "pain standard," which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms. 921 F.2d at 1223. The pain standard requires

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

921 F.2d at 1223 (internal citation omitted). If a claimant testifies as to his subjective complaints of disabling pain and other symptoms ... , the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. *Foote*[ *v. Chater*], 67 F.3d [1553,] 1561–62[ (11th Cir. 1995) (per curiam)]. "Although this circuit does not require an explicit finding as to credibility, ... the implication must be obvious to the reviewing court." 67 F.3d at 1562 (quoting *Tieniber v. Heckler,* 720 F.2d 1251, 1255 (11th Cir. 1983)). The credibility determination does not need to cite " 'particular phrases or formulations' " but it cannot merely be a broad rejection which is " 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.' " *Foote,* 67 F.3d at 1561 (quoting *Jamison v. Bowen,* 814 F.2d 585, 588–90 (11th Cir. 1987)).

*Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (per curiam). "[C]redibility determinations are the province of the ALJ, *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and [a court] will not disturb a clearly articulated credibility finding supported by substantial evidence, *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The ALJ gave "little weight" to Fritts's subjective testimony "for a number of reasons[,]" explaining as follows:

First, the Claimant's credibility is undermined by the testimony regarding his pain.  He testified his pain is a level 7/10 without medication and that medication only reduces his pain to a level 6/10. However, this stands in sharp contrast to the overall objective evidence, which shows he reported his pain was, on average, a level 4/10 in July 2011.  (Ex. 5F.) He also routinely reported his pain was well-controlled with pain medication.  (Ex. 3F.) In June 2012, he told his physical therapist that he had no complaints of pain. (Ex. 7F.)  The medical evidence of record does not show that the Claimant has reported an increase of pain to a level 7/10.  It also does not provide any objective basis for concluding that the Claimant's pain would increase, particularly after participation in rehabilitative therapy.  The lack of evidence to support the Claimant's contention suggests he

exaggerated his pain for secondary gain.

Second, the Claimant's credibility is diminished by his own statement to his therapist in January 2012 that he was looking for employment. (Ex. 5F.) This suggests the Claimant subjectively believes he is capable of employment.   Additionally, it is consistent with his therapist's opinion that he is capable of working.

Third and finally, the Claimant's credibility is undermined by his inconsistent statements regarding his education.   When initially applying for benefits, the Claimant reported he graduated high school. (Ex. 3E.) However, he testified that he did not complete the eleventh grade and never obtained his GED.   His education records indicate that he did not complete high school.   (Ex. 1E.) These inconsistencies raise further questions regarding the veracity of the Claimant's allegations.

(R. 24 – 25).

Fritts does not claim that the ALJ failed to make a "clearly articulated credibility finding," and the above-quoted passage would easily refute such an argument.   Thus, the Court's only remaining duty for Claim 3 is to determine whether that finding is supported by substantial evidence.   In this regard, Fritts largely quarrels with the ALJ's view of the evidence and asks the Court to adopt his own, more favorable interpretation of that evidence, dismissing the inconsistencies cited by the ALJ as "insignificant" and "perceived."   However, the "substantial evidence" standard of review forbids this Court from deciding the facts anew, reweighing the evidence, or substituting its judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178.

As to the ALJ's finding that Fritts had inconsistently reported his level of pain, Fritts complains "there is no … indication in Exhibit 3F" that he "routinely reported his pain was well-controlled with pain medication."   (Doc. 14 at 9).

However, as Fritts himself tacitly points out, the ALJ's citation to Exhibit "3F" appears to have been a scrivener's error, since medical records from multiple dates in Exhibit **2**F report that Fritts's "[p]ain is well controlled with" Lortab and oxycodone and/or that he "has no serious complaints."   (R. 277, 278, 280, 291). Fritts does not challenge the accuracy of the ALJ's discussion of other evidence on this point, which further supports the ALJ's determination that Fritts's subjective reports of the intensity of his pain were inconsistent with the objective record evidence.[7]

As to the ALJ's finding that Fritts's "statement to his therapist in January 2012 that he was looking for employment … suggests [Fritts] subjectively believes he is capable of employment," Fritts quibbles that he actually told the therapist "he is looking at other jobs to do" (R. 375), claiming that "[t]his is not exactly looking for work[, and f]urthermore, looking for work is not the same as performing and maintaining work."   (Doc. 14 at 9).   However, the ALJ's paraphrasing of this statement is not an unreasonable interpretation; moreover, the ALJ cited the statement only as evidence of Fritts's subjective belief in his ability to do work, thus further eroding his credibility in claiming that pain rendered him unable to work.

---

[7] Fritts also asserts that Lortab and oxycodone "are narcotic pain medications used to treat moderate to severe pain and … are addictive[,]" and "[t]he fact that these risky medications are required to control his level of pain is proof of the severity of the pain."   (Doc. 14 at 9). Fritts cites no record evidence or authority to substantiate these medical claims. Regardless, the ALJ was not required to accept as true Fritts's testimony of disabling pain merely because he was taking strong pain medication.   When evaluating a claimant's subjective symptoms, the ALJ considers, *inter alia*, the "effectiveness" as well as the "type" of pain medication a claimant is taking.  20 C.F.R. § 404.1529(c)(3)(iv); SSR 96-7P, 1996 WL 374186, at *3 (July 2, 1996).   The ALJ found that Fritts's "pain was well-controlled with pain medication," and substantial evidence supports that finding.

The ALJ did not purport to find that Fritts could <u>actually</u> work based on this statement.

Finally, Fritts asserts that the inconsistencies cited by the ALJ regarding Fritts's education history are "irrelevant" because "school records show Mr. Fritts repeated seventh and eleventh grades, so he was in school at least twelve years." (Doc. 14 at 10 (citing R. 158 – 160)).  While likely not a sufficient reason, standing alone, to discredit Fritts, the Court disagrees that these discrepancies were completely "irrelevant," as they could reasonably be interpreted as calling into question Fritts's ability to accurately report information to the SSA.  Regardless, even setting aside the discrepancies in Fritts's educational history, the ALJ's other two reasons for giving little weight to Fritts's subjective testimony constitute a clearly articulated credibility finding supported by substantial evidence. [8]

---

[8]    Fritts also complains that "[t]he ALJ never indicated whether Mr. Fritts had an underlying medical condition that could reasonably be expected to produce his pain."  (Doc. 14 at 10).  While the ALJ did not explicitly make a statement saying "Condition X could reasonably be expected to produce pain," the implication is obvious that he determined such a medical condition did exist but that Fritts's testimony as to the severity of his pain was not supported by the record or otherwise credible.  At most, any failure to explicitly articulate an underlying medical condition was harmless error, as Fritts did not satisfy the second half of the "pain standard."

Fritts also argues that consideration of other factors identified in 20 C.F.R. § 404.1529(c)(3) (and restated in SSR 96-7p, 1996 WL 374186, at *3) renders his testimony more credible.  This argument, however, lacks any citation to specific portions of the administrative record and simply invites the Court to reweigh those factors.  The ALJ's decision sufficiently demonstrates that he considered Fritts's medical condition as a whole in making his credibility determination.  *See Mitchell*, 771 F.3d at 782 ("[C]ontrary to Mitchell's contention that the ALJ ignored evidence favorable to Mitchell, 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted). The ALJ's decision in this case was not a broad rejection and was sufficient to enable the district court and this Court to conclude the ALJ considered Mitchell's medical condition as a whole. *See id.*").

Accordingly, the Court **OVERRULES** Fritts's assertions of reversible error in Claim 3.

## B.    Claim 1 (Substantial Evidence Supporting the RFC)

Fritts asserts that, because the "evidence of record before the ALJ contained only raw medical evidence," without any "functional abilities" assessment by a treating physician, the ALJ had a duty to either "order a consultative examination or seek testimony by a medical expert." (Doc. 14 at 4). Relatedly, he argues that substantial evidence does not support the ALJ's RFC assessment because it is based on his own uninformed view of the "raw medical evidence" and "is not supported by the opinion of any treating physician, consultative examiner, reviewing DDS physician or medical expert." (*Id.* at 5).

"It is well-established that the ALJ has a basic duty to develop a full and fair record.[9]   Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) (citations omitted). An ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram*, 496 F.3d at 1269. *See also* 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to

---

[9] Fritts devotes a paragraph of his brief to explaining that this duty is heightened for unrepresented claimants. (*See* Doc. 14 at 5). However, the record reflects that Fritts was represented by an attorney (who is also his present counsel) at his hearing before the ALJ and at the time of the ALJ's decision.

allow us to make a determination or decision on your claim.").

In his decision, the ALJ considered in detail the treatment notes from "Steven Thomas, M.D., [Fritts's] treating physician." (*See* R. 21 – 23). Fritts does not dispute the ALJ's classification of Dr. Thomas as a treating physician, and he makes no effort explain why he could not himself obtain an opinion from Dr. Thomas (indeed, Fritts's brief omits <u>any</u> specific mention of Dr. Thomas). He also does not identify any specific deficiencies in the record evidence that prevented the ALJ from reaching an informed decision, apart from his conclusory assertion that the ALJ was required to obtain a medical opinion in order to formulate the RFC. This assertion, however, is meritless. "[T]he task of determining a claimant's residual functional capacity and ability to work rests with the administrative law judge, not a doctor." *Moore v. Soc. Sec. Admin., Com'r*, No. 15-15213, 2016 WL 2909170, at *3 (11th Cir. May 19, 2016) (per curiam) (unpublished) (citing 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level ..., the administrative law judge ... is responsible for assessing your residual functional capacity.")). The ALJ carries out this task by assessing "all of the relevant medical and other evidence[,]" 20 C.F.R. § 404.1545(a)(3),[10] which "**may** contain medical opinions." 20 C.F.R. § 404.1527(a)(2) (emphasis added). *See also Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (per curiam) (unpublished) ("Although a claimant **may** provide a statement containing a physician's opinion of

---

[10] 20 C.F.R. § 4014.1545 was amended in 1991 to delete language defining an RFC as a "medical assessment." *See Langley v. Astrue*, 777 F. Supp. 2d 1250, 1252-53 (N.D. Ala. 2011).

her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ. 20 C.F.R §§ 404.1513, 404.1527, 404.1545." (emphasis added)).[11]

Here, the ALJ's decision sufficiently indicates that he reached his RFC determination after considering the ample objective medical evidence of record, as well as opinions from Fritts's physical therapist, a consultative examining psychologist, and a non-examining State agency psychological consultant. The ALJ acted within his authority in doing so. *See Kent v. Acting Comm'r of the Social Security Administration*, No. 15-15059, 2016 WL 3159582, at *3 (11th Cir. June 7, 2016) (per curiam) (unpublished) ("There is no merit to Kent's claim that the ALJ conducted his own 'psychiatric analysis' using Dr. Marchese's treatment notes. The ALJ properly considered all of the relevant medical and other evidence, including Dr. Marchese's treatment notes, and assessed Kent's RFC, a determination reserved to the ALJ. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c)."); *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014) (per curiam) (unpublished) ("Contrary to the district court's reasoning, the ALJ did not 'play doctor' in

---

[11]     Fritts argues that an "ALJ is simply not qualified to formulate a residual functional capacity on his own" where, as here, the ALJ did not find the claimant "could perform a full range of light work" but instead "added specific limitations to the RFC." (Doc. 14 at 5 – 6). "This detailed analysis of medical records[,]" Fritts submits, "is not within [the ALJ's] purview[;] such specificity can only be reached by a physician." (*Id.* at 6). Fritts cites no authority to support this argument, and the Court is not aware of any provision in the Social Security regulations imposing a heightened burden of evidentiary support for RFCs providing for less than a full range of a certain category of work.

        Fritts's point is not proven by the fact that a physician's "post-hearing examination" contradicted parts of the ALJ's RFC determination, as this argument erroneously presumes that the ALJ would have been required to accept this evidence as true had it been presented to him. *See, e.g.*, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) (The Commissioner "may reject the opinion of any physician when the evidence supports a contrary conclusion.").

assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC. *See* 20 C.F.R. § 404.1545(a)(3) ('We will assess your residual functional capacity based on all of the relevant medical and other evidence.'). Indeed, the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC. 20 C.F.R. § 404.1546(c)."); *Ramos v. Barnhart*, 119 F. App'x 295, 296 (1st Cir. 2005) (per curiam) (unpublished) ("To the extent appellant suggests that the ALJ should have obtained the testimony of a medical expert to resolve any apparent conflicts between the treating physicians' assessments and the opinions of the state agency physicians, her argument is unavailing because RFC is not a medical assessment, but is instead an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(e)."); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (unpublished) (" 'The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences.' *McCain v. Dir., OWCP,* 58 Fed. Appx. 184, 193 (6th Cir. 2003) (citing *Underwood v. Elkay Mining,* 105 F.3d 946, 951 (4th Cir. 1997)).").[12] Thus, the Court **OVERRULES**

---

[12]     Fritts asserts that an "ALJ cannot act as both judge and physician." (Doc. 14 at 5). The (non-binding) authority he cites in support of this statement, however, stands for the proposition that an ALJ "abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physician [and] arbitrarily substitute[s] his own hunch or intuition for the diagnosis of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-4 (11th Cir. 1992) (Johnson, J., concurring).  *See also Jiles v. Comm'r of Soc. Sec.*, Civil Action No. 05-G-0861-S, 2006 WL 4402937, at *4 (N.D. Ala. Sept. 11, 2006) ("It is an ALJ's 'uninformed medical evaluations' that are prohibited." (citing *Marbury*, 957 F.2d at 840-41 (Johnson, J., concurring)).  In other words, these cases simply amplify the unremarkable observation that, when presented with the opinions of medical professionals, an ALJ may not simply disregard them without a valid explanation.  *See Winschel*, 631 F.3d at 1179 ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor" to permit "a reviewing

Fritts's assertions of reversible error in Claim 1.

### C.    Claim 2 (New Evidence Considered by Appeals Council)

In denying Fritts's request for review, the Appeals Counsel considered "additional evidence from Dr. Novack, Dr. Dimick, and Mr. Gurley" submitted by Fritts but determined "that this information does not provide a basis for changing the Administrative Law Judge's decision."  (R. 1 – 2).  Fritts argues that remand is appropriate because the "Appeals Council did not demonstrate that it adequately evaluated the new evidence, as required."  (Doc. 14 at 7).  This argument is foreclosed by *Mitchell v. Commissioner, Social Security Administration*, 771 F.3d 780, 782-85 (11th Cir. 2014).  Recently, in *Parks ex rel. D.P. v. Commissioner, Social Security Administration*, 783 F.3d 847 (11th Cir. 2015), the Eleventh Circuit, applying *Mitchell*, rejected an identical argument that the Appeals Council "erred because it failed to make specific findings of fact about the evidence that it added to the record when it denied [a] request for review[,]" explaining as follows:

> "The Appeals Council may deny or dismiss [a] request for review...." 20 C.F.R. § 416.1467. But the Appeals Council is not required to make specific findings of fact when it denies review. It need only "consider the additional evidence" that is new, material, and chronologically relevant. *Id.* § 416.1470(b). The Appeals Council stated that it

---

court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." (quotation omitted)).  These cases in no way stand for the proposition that an ALJ is not competent to consider medical evidence and render an RFC determination without a medical opinion.

Fritts also asserts that "the ALJ failed to link the evidence to the RFC determination by describing how the evidence supports each conclusion."  (Doc. 14 at 7).  His argument on this point, however, consists solely of quotes from various district court cases followed by a conclusory assertion of error.  Other than a doctor's report produced one day <u>after</u> the ALJ's decision, Fritts fails to cite anything in the administrative record (e.g., inconsistencies in the ALJ's reasoning; probative record evidence available to the ALJ that was not considered) that calls the ALJ's RFC determination into question.

considered the new evidence that Parks submitted, and the Appeals Council added the evidence to the record. **The Appeals Council was not required to do more.**

Our Court recently decided *Mitchell v. Commissioner, Social Security Administration,* which controls this question. 771 F.3d 780. In *Mitchell,* we held that there is no requirement that "the Appeals Council ... provide a detailed discussion of a claimant's new evidence when denying a request for review." *Id.* at 783. We explained that, where "the Appeals Council expressly stated in its letter to [the claimant] that it had considered his additional evidence, ... we ha[d] no basis ... to second-guess that assertion." *Id.* Parks's situation is indistinguishable from that of the claimant in *Mitchell.* Parks submitted additional evidence to the Appeals Council, and the Appeals Council added the evidence to the record, stated that it considered the evidence, and denied review. As in *Mitchell,* nothing suggests that the Appeals Council failed to consider Parks's new evidence.

Parks's reliance on *Epps v. Harris,* 624 F.2d 1267 (5th Cir.1980), and *Bowen v. Heckler,* 748 F.2d 629 (11th Cir. 1984), is misplaced. In *Epps,* our predecessor court found that the Appeals Council had not "adequately evaluate[d]" new evidence. 624 F.2d at 1273. But as we explained in *Mitchell,* the decision in *Epps* "arose in a different procedural context," where the Appeals Council *affirmed* the decision of the administrative law judge. *Mitchell,* 771 F.3d at 783. *Epps* has little bearing on a denial of a request for review. *Bowen* is inapposite too. In *Bowen,* our Court "concluded the record established that the Appeals Council did not adequately evaluate additional evidence submitted to it because it viewed each of the claimant's impairments in isolation and did not consider their combined effect." *Mitchell,* 771 F.3d at 784. "*Bowen* requires the Appeals Council to apply the correct legal standards in performing its duties," but it does not require that the Appeals Council include with every denial of review a "detailed rationale for why each piece of new evidence submitted to it does not change the [administrative law judge]'s decision." *Mitchell,* 771 F.3d at 784.

783 F.3d 847, 852-53 (emphasis added).

"If [Fritts] had asked [the Court] to reverse the denial of review on the merits, [the Court] could have examined the new evidence that she presented to the Appeals Council and reviewed its decision." *Id.* at 853. However, Fritts "challenges

only the failure of the Appeals Council to make detailed findings of fact. Because the Appeals Council is not required to make detailed findings, [the Court] need examine its decision no further." *Id.* Accordingly, the Court **OVERRULES** Fritts's assertions of reversible error in Claim 2 and finds that the Commissioner's final decision is due to be **AFFIRMED**.

## V.    Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's March 3, 2015 final decision denying Fritts's application for a period of disability and DIB benefits is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 24th day of June 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**